# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DAVID CASTILLO,

        Plaintiff,

vs.                                                                No. 05-1228-JC

HOBBS MUNICIPAL SCHOOL BOARD, and
HOBBS SCHOOL BOARD MEMBERS, PAT JONES, JOE PUCKETT, PAUL CAMPBELL,
BOB RAY, ALBERT CABALLERO, JOE CALDERON, and, FORMER SUPERINTENDENT
STAN ROUNDS; and, PERSONNEL DIRECTOR PAM MCBEE; in their official capacity; and,
STAN ROUNDS; PAM MCBEE; and JOE CALDERON; in their private capacity; and
RHONDA CASTILLO,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's *Notice of Motion and Motion for Judgment on the Pleadings*, filed on January 27, 2006 (*Doc.* 5), *Plaintiff's Motion for Leave to File First Amended Complaint*, filed on June 23, 2006 (*Doc.* 32) and *Plaintiff's Motion to Enlarge Time for Filing Response to Motion to Dismiss*, filed June 26, 2006 (*Doc.* 34). The Court, having considered the motions, any response thereto, the relevant authority, and being otherwise fully advised, denies the Plaintiff's Motion for Leave to File First Amended Complaint and the Plaintiff's Motion to Enlarge Time for Filing Response to Motion to Dismiss; however, the Court grants the Defendants' Notice of Motion and Motion for Judgment on the Pleadings in part and denies it in part.

1

I.   **Factual Background**

In the Spring of 2004, Plaintiff David Castillo ("Plaintiff") was nearing the end of his one-year employment contract as the assistant principal of Highland Junior High School.[1]  At that time, Plaintiff was purportedly having marital problems with his wife, Defendant Rhonda Castillo ("Castillo") and the two were apparently living apart.  Castillo had installed a device on her home phone to record all incoming and outgoing phone calls, an action she claims to have taken to document harassing phone calls she received from unknown parties.  *Doc.* 26 at 5 .

During the same time frame, Plaintiff contends that he was approached by School Board member Joe Calderon, who asked Plaintiff to support a certain political candidate in an upcoming election.  The Plaintiff admits he agreed to support the candidate, Mr. Albert Gonzales, and even agreed to become his campaign manager.  Compl. ¶ 18.[2]  Later, Plaintiff informed Calderon that he would be unable to continue acting as campaign manager.  Instead, Plaintiff proposed that Castillo become campaign manager, which she did.

Sometime in early March 2004, Castillo delivered an audio tape of a phone conversation between Plaintiff and his secretary, Lori Herrera, to Calderon. The tape contained a graphic and sexually explicit conversation between Plaintiff and Ms. Herrera.  This conversation apparently occurred on the eve of the local election involving Mr. Gonzales.  Mr. Gonzales lost the election and Calderon was allegedly upset that Plaintiff did not attend the campaign rally for Mr. Gonzales

---

[1]Specifically, Plaintiff was under contract as an administrator for the time period beginning August 4, 2003 and ending June 14, 2004.  Compl., Ex. A.

[2]As School Board Defendants note, Plaintiff did not sequentially number the paragraphs in the Complaint.  Accordingly, this Court has followed the suggestion of Hobbs School Defendants and has identified each paragraph in the Complaint by consecutive numbering.

that night.

After receiving the audio tape, Calderon contacted then-Superintendent of Operations Cliff Burch and was told to give the tape directly to then-Superintendent Stan Rounds. After hearing the tape, Mr. Rounds became concerned about potential sexual harassment implications and played the tape for both the Assistant Superintendent of Personnel Pam McBee and Mr. Burch. Mr. Rounds also played the tape for John Notaro, Principal of Highland Junior High School and Plaintiff's immediate supervisor.

Mr. Rounds ultimately played the tape for Plaintiff and Ms. Herrera. Ms. Herrera refused to file any sexual harassment claims against Plaintiff. Compl. ¶ 18. Mr. Rounds, however, determined that the couple's supervisor/subordinate relationship could not continue and decided that Plaintiff's contract, due to expire on June 14, 2004, would not be renewed at the end of the school year. After transferring Ms. Herrera to another school site, Mr. Rounds offered Plaintiff a position as a first grade school teacher for the 2004-2005 school year.[3] Plaintiff accepted the offer but asked for additional teaching assignments in order to increase his pay, which had been reduced by the job change. Accordingly, he was offered positions teaching night school and summer school, both of which he accepted. Before his new contract began, however, Plaintiff accepted employment in another school district. Plaintiff then filed a claim with the EEOC and ultimately in state court against the Hobbs Municipal School Board collectively and each of the individual Hobbs School Board Members: Pat Jones, Joe Puckett, Paul Campbell, Bob Ray, Albert Caballero, and Joe Calderon, as well as former Superintendent Stan Rounds, Personnel

---

[3]Specifically, Plaintiff was offered the teaching contract for the time period beginning August 16, 2004 and ending May 27, 2005. Compl., Ex. B.

3

Director Pam McBee (hereinafter "Hobbs School Defendants") and Rhonda Castillo.

## II.  **Procedural Background**

Plaintiff filed his charge with the EEOC on February 7, 2005, alleging constructive discharge and employment discrimination based upon national origin.  On May 16, 2005, the EEOC issued a dismissal and notice of rights advising Plaintiff that he had 90 days in which to file an action in federal court.  The deadline to appeal the EEOC decision was August 15, 2005.  In addition, the Human Rights Division of the State of New Mexico ("HRD"), on its own accord, sent Plaintiff an order of Nondetermination, dated July 19, 2005, advising Plaintiff that he had 90 days to file an appeal of the order of Nondetermination in state court.  The 90-day deadline for filing an appeal in state court was October 17, 2005.

On October 24, 2005, more than two months after the 90-day deadline stated in the EEOC decision, Plaintiff filed an action in state court against Hobbs School Defendants and Castillo for violating his first amendment rights, constructive discharge, employment discrimination based upon national origin, retaliation, various tort and contract claims and a violation of federal and state wiretapping laws.  Hobbs School Defendants sought to remove the Complaint to federal court on November 23, 2005; however, Hobbs School Defendants did not yet have the consent of Castillo until allegedly receiving her consent to remove on December 9, 2005.  Hobbs School Defendants filed an Answer to the Complaint on December 5, 2005.  On December 14, 2005, Hobbs School Defendants filed a supplemental removal, this time including a statement that Castillo had purportedly consented to removal.

Magistrate Judge Smith issued an Initial Scheduling Order on January 5, 2006. School Board Defendants filed a Notice of Motion and Motion for Judgment on the Pleadings on January

27, 2006.  In addition, the Court mailed a letter of deficiency to Plaintiff's then attorney Ruben Cortez regarding compliance with D.N.M R.7.1(b) on January 31, 2006.  Hobbs School Defendants filed a Notice of Completion for Motion for Judgment on the Pleadings (*Doc. 5*)("Motion") on March 15, 2006.  As of that date, Castillo had yet to be served with the Complaint.  She was finally served on March 28, 2006 and she filed an Answer on April 27, 2006.  On May 4, 2006, Castillo submitted a letter through counsel for Hobbs School Defendants indicating her desire to join in the Motion.

Pursuant to the Initial Scheduling Order, Plaintiff's counsel was to appear for an Initial Scheduling Conference on February 24, 2005.  He failed to appear.  Plaintiff's counsel was ordered to appear on March 13, 2006, to explain his absence.  At the hearing on March 13, 2006, Plaintiff's counsel was given until March 31, 2006 to either obtain admission to the United States District Court for the District of New Mexico or to associate licensed counsel.

On March 28, 2006, Judge Black held a show-cause hearing to determine why the case should not be dismissed.  Plaintiff's motion to remand to state court was denied and Plaintiff was **given 10 days to obtain admission to United States District Court for New Mexico or to associate licensed counsel**.  This Order was dated March 29, 2006. At the same hearing, the Motion was taken under advisement.  Plaintiff substituted himself as counsel in the case on April 12, 2006, and remained *pro se* until attorney Eric Dixon entered his appearance on behalf of Plaintiff on June 19, 2006.

On June 23, 2006, Plaintiff filed a Motion for Leave to File First Amended Complaint (*Doc*. 32)("Motion for Leave").  Defendants filed a Response on July 10, 2006 (*Doc*. 36).  On June 26, 2006, Plaintiff filed a Motion to Enlarge Time for Filing Response to Motion to Dismiss

(*Doc.* 35)("Motion to Enlarge Time"), which was fully briefed on July 17, 2006.

## III.   Legal Standard

When considering whether to dismiss a complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted, "[w]e accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). "The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

Rule 12(c) of the Federal Rules of Civil Procedure provides in pertinent part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)(citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)). The Court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Id.* (quoting *Conley v. Gibso*n, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))(internal quotations omitted).

## IV.   Discussion

### A.   Motion for Leave to File First Amended Complaint

Leave to amend a pleading shall be "freely granted" absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by previous

amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or

futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222

(1962).  "A party may amend the party's pleading once as a matter of course at any time before a

responsive pleading is served . . . .  Otherwise a party may amend the party's pleading only by

leave of court or by written consent of the adverse party; and leave shall be freely give when

justice so requires."   FED. R. CIV. P. 15.

 "It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave

to amend . . . . " *Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996)(quoting *Frank v. U.S. West*,

3 F.3d, 1357,1365 (10th Cir. 1993).  The Tenth Circuit has held that undue delay, unaccompanied

by a showing of prejudice to the opposing party, can be a sufficient reason to deny leave to

amend.  *See, e.g., Federal Insurance Co. v. Gates Learjet Corp*., 823 F.2d 383 (10th Cir. 1987);

*First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127 (10th Cir. 1987).  Specifically:

> Courts have denied leave to amend in situations where the moving party cannot
> demonstrate excusable neglect. For example, courts have denied leave to amend where the
> moving party was aware of the facts on which the amendment was based for sometime
> prior to the filing of the motion to amend.

*Federal Insurance Co.,* 823 F.2d at 387.

 Here, the record reflects that Hobbs School Defendants did not consent to Plaintiff's

Motion for Leave, perhaps because Plaintiff's request to amend came nearly five months after the

School Board Defendants filed the Motion.  The Plaintiff had neither previously sought nor

obtained an extension to respond to the Motion prior to June 23, 2006; rather, the Plaintiff chose

to contest jurisdiction and hire new counsel while the Motion was pending.  Further, nothing in

the record indicates that the facts upon which the Amended Complaint is based have changed

since the Complaint was originally filed.  The Plaintiff has not shown good cause to permit such an extension and this undue delay constitutes a sufficient basis to deny the Motion for Leave.

### B.    Motion to Enlarge Time for Filing Response to Motion to Dismiss

Plaintiff advances two arguments as to why this Court should allow him additional time to file a response to the Motion and why the extension of time, if granted, would assist his claims for relief.  Plaintiff argues that, though his former attorney did receive the Motion by mail, the attorney was not licensed to practice in federal court and was therefore not authorized to accept service on Plaintiff's behalf.  *Doc*. 34.  Consequently, Plaintiff further argues that he should have been personally served with the Motion. These arguments are not persuasive.

FED. R. CIV. P. 5(a) states in pertinent part that "every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties."  FED. R. CIV. P. 5(b) states that "[s]ervice under Rules 5(a) and 77(d) on a party represented by an attorney is made on the attorney unless the court orders service on the party.  FED. R. CIV. P. 5(b)(2) states that "[s]ervice under Rule 5(a) is made by . . . (B) [m]ailing a copy to the last known address of the person served. Service by mail is complete on mailing."  *See also Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1266 (10th Cir. 1999)(holding that service by mail is accomplished, for purposes of Rule 5[b], when documents are placed in the hands of the United States Post Office or in a Post Office Box).

The record reflects that School Board Defendants' certificate of service on Plaintiff's then counsel, Ruben Cortez, was filed on January 27, 2006.  As Hobbs School Defendants point out, Plaintiff did not elect *pro se* status until April 12, 2006.  As of January 27, 2006, Plaintiff was still represented by his original counsel.  Additionally, Plaintiff's then-counsel appeared in court on

two separate occasions: March 13, 2006 and March 28, 2006.  The Court denied the Plaintiff's

motion to remand and challenge to jurisdiction.  Plaintiff was further notified that the present

Motion would be taken under advisement.  Though the record is unclear as to what the Plaintiff's

oral argument specifically addressed at that hearing, even if Plaintiff's then counsel had stated that

service of the Motion was improper, such arguments would not have been availing given the

foregoing analysis.  Since Plaintiff never requested an extension even after being notified on

March 28, 2006, that the Motion would be taken under advisement, Plaintiff shall not be allowed

further opportunity to respond to the Motion.

Here, rather than address the Motion, Plaintiff chose to instead contest this Court's

jurisdiction, even after being told by the Court on three separate occasions to either associate

licensed counsel or apply for a license to practice in the District of New Mexico.[4] *See Docs.* 16,

19.  The Court will not assist a litigant who makes a strategic decision to contest jurisdiction

while a dispositive motion is pending, only to change course by associating licensed counsel to

address the merits of the pending motion months after the filing of a Notice of Completion.

Accordingly, the Court will deny Plaintiff's Motion to Enlarge Time and, hence, will not consider

Plaintiffs' Response to Motion for Judgment on the Pleadings.

### C. <u>Title VII Claims</u>

#### 1. <u>Racial Discrimination and Discrimination based upon National Origin</u>

Plaintiff first advances a claim for racial discrimination, which as Hobbs School

Defendants correctly point out, can either be collapsed into the claim for discrimination based

upon national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3

---

[4]This includes a letter from the Court regarding the deficiency of Plaintiff's then-counsel.

9

*et seq.* ("Title VII") previously filed with the EEOC, or considered a separate stand alone claim. In either case, School Board Defendants have shown, and Plaintiff does not dispute, that the Complaint was untimely.

"It is well settled that the 90-day period for filing a civil lawsuit after final disposition of a complaint by the EEOC is 'a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Biester v. Midwest Health Servs.*, 77 F.3d 1264, 1267 (10th Cir. 1996)(quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982)). Courts have narrowly construed equitable exceptions to the time limitations set out in Title VII. *Id.* at 1267. The Tenth Circuit "has generally recognized equitable tolling of Title VII time limitations only if the circumstances of the case 'rise to the level of active deception which might involve the powers of equity to toll the limitations period.'" *Id.* (quoting *Cottrell v. Newspaper Agency Corp.*, 590 F. 2d 836, 838-39 (10th Cir. 1979)). Under the circumstances, this Court declines to toll the time to allow Plaintiff to proceed on a theory of a Title VII violation. The Plaintiff has failed to allege anything pertinent to support his conclusion that his two-month delay in filing the Complaint is excusable. Further, the HRD sent the Plaintiff a letter reminding him of the pending deadline for filing a separate claim with the state. Plaintiff was unable to meet either the state or federal filing deadlines. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S.147, 152, 80 L. Ed. 2d 196, 104 S. Ct. 1723 (1984). Therefore, the filing deadline for the Tile VII action should not be tolled.

Regarding the Complaint, if the Court were to treat the racial discrimination claim as

separate from the claim for discrimination based upon national origin, Plaintiff failed to exhaust

his administrative remedies as such a charge was not before the EEOC.  If, instead, the Court

construes the racial discrimination claim as an extension of the claim based upon national origin

discrimination, the claim is untimely because it was not filed within 90 days.  Either way, the Title

VII claim must be dismissed.

### 2.    Retaliation and Constructive Discharge

Plaintiff further asserts a claim of retaliation in violation of Title VII.  This claim, however,

is barred for both untimeliness and failure to exhaust.  Plaintiff's charge that he was "forced to

resign [his] position for allegedly violating school policy," one which he contends had been

violated before by Caucasians without consequence, is founded upon either racial discrimination

or discrimination based upon national origin.  Compl., Ex. C.  In either case, as stated previously,

the claim is untimely.  Therefore, the Title VII claims based upon racial

discrimination/discrimination based upon national origin and the claims for retaliation and

constructive discharge are dismissed.

### D.    Section 1983 Claim

Under the heading "Plaintiff's Section 1983 Claims" (Compl. ¶ 43), Plaintiff alleges:

Defendant's conduct repeatedly violated Plaintiff's United States Constitutional rights to
political freedom, as well as, his right to protected free speech, both guaranteed by the
First Amendment.  Defendants' conduct repeatedly violated his privacy rights under the
Fourth Amendment, all made applicable to the States through the Fourteenth Amendment.

"A state employee suffering from discrimination may assert claims under both section 1983 and

Title VII."  *Brown v. Hartshorne Public School District #1*, 864 F.2d 680, 682 (10th Cir. 1988).

"'[A] plaintiff may base a section 1983 claim on actions proscribed by Title VII where those

actions also violate the United States Constitution.'"  *Polson v. Davis*, 895 F.2d 705, 710 (10th

Cir. 1990).[5]  "Because no federal statute of limitations is provided for in section 1983 suits, we

measure the timeliness of such actions by state law." *Brown v. Hartshorne Public School Dist.*

*#1*, 926 F.2d 959, 962 (10th Cir. 1991)(citing *Hardin v. Straub*, 490 U.S. 536, 538, 109 S. Ct.

1998, 2000, 104 L. Ed. 2d 582 (1989). *See Derstein v. Van Buren*, 828 F.2d 653, 654-55 (10th

Cir. 1987).

In determining whether Plaintiff was unconstitutionally deprived of a liberty interest, the

Court notes that "[t]he concept of liberty recognizes two particular interests of a public employee:

1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take

advantage of other employment opportunities." *Miller v. Mission*, 705 F.2d 368, 373 (10th Cir.

1983)(internal citations omitted).  To establish a liberty interest, "a public employee must now (1)

show that [s]he was stigmatized in connection with an alteration of her legal status as an

employee, (2) allege that the stigma arose from substantially false characterizations of the

employee or her conduct, and (3) demonstrate that the damaging characterizations were made

public through channels other than the litigation initiated by the employee." *Sipes v. United*

*States*, 744 F.2d 1418, 1421 (10th Cir. 1984).  With respect to the first prong of this test, the

court in *Allen v. Denver Public School Bd.,* 928 F.2d 978, 982 (10th Cir. 1991) *overruled on*

*other grounds by Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1228 (10th Cir. 2000), held

that "[t]o the extent [a §1983] claim attempts to allege a liberty interest, it is necessary that the

alleged stigmatization be entangled with some further interest, such as the ability to obtain future

---

[5]The Court notes that Section 1983 cannot be used to assert the violation of rights created
only by Title VII.  *Id.*

employment. *Melton v. City of Oklahoma City*, 928 F.2d 920 (10th Cir. 1991); *Paul v. Davis*, 424 U.S. 693, 701, 709-10 (1976); *see also McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981)("Stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").  Only where the stigmatization results in the inability to obtain other employment does this type of claim rise to a constitutional level.  *See, e.g., Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987).

Here, the Court does not find a violation of a liberty interest in Plaintiff's continued employment.[6]  Regardless, after Mr. Rounds told Plaintiff his current employment contract would not be renewed, Mr. Rounds offered Plaintiff a first grade teaching position.  Plaintiff accepted this position, and accepted additional teaching assignments to bolster his salary from the job change; however, prior to the effective date of the teaching contract, Plaintiff decided to accept an employment opportunity in another district.  Compl. ¶¶ 33, 38.  Clearly the stigmatization that Plaintiff alleges was not of such magnitude to prevent him from being offered another job in the same district, not to mention a job in another district.  Consequently, Plaintiff has failed to demonstrate that the actions taken by Hobbs School Defendants prevented him from securing other employment.  The § 1983 claim is, therefore, dismissed.

###    E.    First Amendment Claims

####        1.    Freedom of Association

Plaintiff alleges that Defendant's actions "run counter to first amendment freedoms" by "restrict[ing] political belief and association," claims that are premised upon Plaintiff's "failure to support Defendant's candidate."   Compl. ¶ 47.  In short, Plaintiff contends that one reason his

---

[6]In fact, it is questionable whether Plaintiff has alleged one.

contract was not renewed was his speech in the form of his campaign involvement or lack thereof.

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999)(quoting *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997)).  Implicit in the right to associate is the right not to associate.  *See California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).  Expressive conduct receives First Amendment protection and does not have to be pure speech.  However, some conduct may contain such a small component of expression that it is found not to be protected by the First Amendment at all. *See Bee v. Greaves*, 744 F.2d 1387, 1393-94 (10th Cir. 1984)  Further, not all conduct can be labeled speech. *United States v. O'Brien*, 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968).

Although conduct can constitute "speech," Plaintiff does not claim that he ceased managing Mr. Gonzales' campaign with the intent to express a message thereby.  In the absence of an allegation that Plaintiff engaged in expressive conduct, the Court questions whether "speech" is at issue in this case. *See, e.g., Michelin v. Jenkins*, 704 F. Supp. 1, 5 (D.D.C. 1989)(holding that teacher who claimed she was fired for participating on a committee which criticized the school administration did not raise a First Amendment claim in the absence of an allegation that the teacher herself criticized the school); *see also Maciariello v. Sumner*, 973 F.2d 295, 299 (4th Cir. 1992)(holding that officers' investigation of their superior for misconduct was not intended to express a message, and thus was not speech), cert. denied, 113 S. Ct. 1048 (1993).

14

Under a freedom of association claim, "[o]fficial pressure upon employees to work for political candidates not of the worker's own choice constitutes a coercion of belief in violation of fundamental constitutional rights." *Connick*, 461 U.S. at 149. Further, "political affiliation is not limited to membership in a political party and includes commonality of political purpose and support of political candidacy." *Smith v. Sushka*, 117 F.3d 965, 970 n. 6 (6th Cir. 1997).

Here, Plaintiff admits that he agreed to support Mr. Gonzales and to take the position as his campaign manager. Compl. ¶ 11. Plaintiff subsequently decided that he could not continue as manager but would ask his wife to head the campaign, which she did. Plaintiff alleges nothing further about his involvement with the campaign, save his bald assertion that "[Calderon] was furious at Plaintiff . . . [because] Mr. Gonzales had lost the election because Plaintiff failed to support him as promised." Compl. ¶ 14. Plaintiff's subjective belief, without more, cannot sustain his allegations. Further, nothing in the record indicates Plaintiff's support of Mr. Gonzales was the result of coercion. In fact, Plaintiff admits that Calderon "became his friend and mentor"and "took Plaintiff under his wing." Compl. ¶¶ 8-9. Consequently, Plaintiff's freedom of association claim is denied.

### 2.    Freedom of Speech

Plaintiff also alleges that "Defendants repeatedly punished Plaintiff for his having uttered speech on the taped conversation." Compl. ¶ 55. Hobbs School Defendants correctly identify, however, that verbal acts of sexual harassment are not protected speech. *See R.A. V. v. City of St. Paul*, 505 U.S. 377, 389-90, 120 L. Ed. 2d 305, 112 S. Ct. 2538 (1992); *Roberts v. United States Jaycees*, 468 U.S. 609, 628, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984). Here, Plaintiff admits that he engaged in a conversation with his secretary that "would otherwise be considered vulgar,

unprofessional and offense [sic]. The language used by the parties became graphic and sexually

explicit in nature." Compl. ¶ 13. Such behavior and language are in direct conflict with N.M.

Admin. Code 6.60.9.9(C) , which states in pertinent part:

> The education profession has been vested by the public with an awesome trust and
> responsibility. To live up to that lofty expectation, we must continually engender public
> confidence in the integrity of our profession, and must strive consistently in educating the
> children of New Mexico, all of whom will one-day shape the future. To satisfy this
> obligation, we:
>
>       *          *          *          *
>
>  (10) shall not sexually harass any school employee, any school visitor or anyone else we
> might encounter in the course of our official duties, which includes:
>
>   (a) making any sexual advances, requests for sexual favors, repeated sexual references, and
> name calling by means of sexual references or references directed at any gender-specific
> individuals named above;
>
>   (b) making any other verbal gesture or physical conduct with any of the above-named
> individuals even where the licensed educator believes they consent or they actually initiate the
> activity;

Despite the fact that the taped conversation and any relationship was consensual, Hobbs

School Defendants took reasonable steps to ensure compliance with the state regulations. As one

district court noted, "[l]iterally hundreds of hostile work environment sexual harassment cases,

starting with the seminal case of *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 91 L. Ed. 2d 49,

106 S. Ct. 2399 (1986), indicate that employers (including public employers) are not only

permitted to try to prevent verbal acts of harassment in their workplaces, but Title VII requires

them to do so."(quoting *Jarman v. City of Northlake*, 950 F. Supp. 1375, 1379 (N. Dist.

Ill.1997)).

After an investigation revealed that Plaintiff was in violation of the sexual harassment

policy, Rounds decided not to renew Plaintiff's contract but instead offered Plaintiff a teaching position and reassigned Plaintiff's secretary.  These actions were squarely within Defendant Rounds' statutory authority as Superintendent.  *See*  NMSA. § 22-5-14  (2006).  Accordingly, Plaintiffs' claim for violation of his First Amendment right to freedom of speech must be dismissed.

###    F.    <u>Qualified Immunity</u>

Hobbs School Defendants point to NMSA §§41-4-1 through 41-4-27, known as the "Tort Claims Act" ("TCA"), in raising a defense of qualified immunity to a number of Plaintiff's claims. § 41-4-4 of the TCA states that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act [28-22-1 NMSA 1978] and by Sections 41-4-5 through 41-4-12 NMSA 1978."

The statute defines the term scope of duties as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  NMSA § 41-4-3(G).  In *Seeds v. Lucero*, 113 P.3d 859, 862 (N.M. Ct. App. 2005), the Court held that "case law establishes that a public employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal."   *See also Risk Mgmt. Div., Dep't of Fin. & Admin. v. McBrayer,* 14 P.3d 43, (N.M. Ct. App. 2000). With respect to the following claims brought by Plaintiff, this Court will consider the defense of qualified immunity where applicable.

###    1.    <u>Plaintiff's Privacy Claims</u>

Plaintiff alleges Hobbs School Defendants violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and the New Mexico Abuse of Privacy Act.  *See* 18 U.S.C. § 2510 *et seq.* and N.M. Stat. Ann. § 30-12-1 *et seq.*  These statutes provide a civil cause of action to any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of the statute.

The Tenth Circuit has joined with the majority of circuits in holding that interspousal wiretapping is an actionable offense.  See *Heggy v. Heggy,* 944 F.2d 1537, 1539 (10th Cir. 1991).  *See also United States v. Jones*, 542 F.2d 661, 673 (6th Cir. 1971)(holding that if a further limitation is needed to exempt spousal wiretaps from Title III, that need must be addressed to Congress).  Nonetheless, as School Board Defendants correctly point out, not all spousal wiretapping is actionable:

> Under our interpretation of Title III, we hasten to note that not all wiretap interceptions involving spouses will be actionable. First, the wording of the statute, while broad, requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions. Second, Title III liability for use or disclosure of the contents of an intercepted communication requires both intentional conduct and knowledge that 'the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection.' Third, consent under 2511(2)(c) is an exception that will take many fact patterns out of Title III liability.

*Thompson v. Dulaney*, 970 F.2d 744, 748 (10th Cir. 1992).

Whether Castillo knew or had reason to know that the tape was the product of an illegal wiretap is a material fact at issue.  Though the recording of Plaintiff's telephone conversation may have been inadvertent, the Court questions why Castillo would have intercepted an outgoing telephone call made by her husband if her reason for installing the recording device on the phone was to document harassing phone calls that she *received* from unknown parties.  *Doc. 26* at 5.

Accordingly, Castillo has not shown beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, which is the proper standard for a rule 12(c) motion.  *See Callery v. United States Life Ins. Co.*, 392 F.3d 401, 404 (10th Cir. 2004). Therefore, this claim against Castillo should move forward.

In addition, with respect to the claim against the School Board Defendants for use or disclosure, though they expressly deny knowledge that Castillo's tape was obtained in violation of the federal wiretapping statute, there is a question as to how the School Board Defendants received the audio tape.  Plaintiff alleges that Castillo played the tape for Calderon on the night of the election.  Compl. ¶¶ 14-15.  If Calderon had knowledge of the circumstances surrounding the recording of the tape, his knowledge of the tape's creation can be imputed to the School Board Defendants, thereby placing them on notice during their investigation of the Plaintiff. Taking the facts in a light most favorable to the Plaintiff, this claim against School Board Defendants should also move forward.

With respect to the claim brought pursuant to the New Mexico Abuse of Privacy Act, NMSA § 30-12-1 *et seq.* (2006), § 30-12-1 defines interference with communications as follows:

Interference with communications consists of knowingly and without lawful authority:

*          *          *          *

(B) cutting, breaking, tapping or making any connection with any telegraph or telephone line, wire, cable or instrument belonging to or in the lawful possession or control of another, without the consent of such person owning, possessing or controlling such property.

The language of the statute speaks for itself.  The Hobbs School Defendants had no involvement with recording the conversation. Instead, Plaintiff alleges that "Plaintiff's wife had

earlier rigged a secret recording device to the telephone." Compl. ¶ 14. Therefore, there is a question as to whether Plaintiff or Castillo owned, possessed or controlled the telephone. Accordingly, this claim should proceed against Castillo but as to Hobbs School Defendants, it is dismissed.

### 2.    **Breach of Contract**

Plaintiff claims breach of contract, asserting that Defendant Calderon told him that "he had gotten him a promotion to the high school with a raise in pay." Compl. ¶ 12. Assuming for purposes of the Motion that Plaintiff can establish the presence and validity of an unwritten contract, there can be no breach thereof because of the nature of the promise. Defendant Rounds, as the superintendent, had the statutory authority to hire or fire employees. NMSA § 22-5-14(3) states that the local superintendent shall "employ, fix the salaries of, assign, terminate or discharge all employees of the school district." Plaintiff has alleged that Calderon, a school board member, "had gotten him a promotion to the high school with a raise in pay." Compl. ¶ 12. Clearly, Calderon is not authorized to promote employees. Therefore, the breach of contract claim is barred as to School Board Defendants.

### 3.    **Civil Conspiracy**

Plaintiff also alleges civil conspiracy. Compl. ¶ 93. Specifically, Plaintiff contends that "[Castillo] and Calderon commiserated with each other about Plaintiff's betrayal of both of them and how this tape could ruin his career." Compl. ¶ 15. Plaintiff further alleges that Calderon then formulated a scheme and would use the tape to ultimately "serve as a basis for a whole series of planned adverse employment decisions against Plaintiff." Compl. ¶ 16. Plaintiff, however, has not alleged that School Board Defendants acted in concert with Castillo in order to tape record the

conversation from the home. Therefore, the Court can only assume that Plaintiff's claim is based upon the Hobbs School Defendants' eventual use of the audiotape.

Regardless of the Hobbs School Defendants' purpose in using the tape, "a public employee's conspiratorial and wrongful intent does not remove the employee's immunity when the employee's acts are within the scope of his or her duties." *Seeds v. Lucero,* 113 P.3d 859, 863 (NM Ct. App. 2005). The Court further held, "a wrongful purpose formed in an agreement is no less protected than is the same purpose in carrying out acts that are within the scope of duty." *Id.*

Despite Plaintiff's characterization of Calderon or the School Board Defendants intentions regarding the tape, the Hobbs School Defendants acted within their scope of duty in playing the tape among themselves as part of the investigation. Thus, Plaintiff's claim for civil conspiracy is barred based upon qualified immunity.

WHEREFORE,

**IT IS ORDERED**:

**I.** *Plaintiff's Motion for Leave to File First Amended Complaint* (*Doc. 32*), is DENIED;

**II.** *Plaintiff's Motion to Enlarge Time for Filing Response to Motion to Dismiss* (*Doc. 34*) is DENIED;

**III.** Defendants' *Notice of Motion and Motion for Judgment on the Pleadings* (*Doc. 5*), is GRANTED in part and DENIED in part such that:

**(1)** All claims against Hobbs School Defendants except the privacy claim brought under 18 U.S.C. § 2510 *et seq.* are dismissed;

21

(2) All claims against Defendant Castillo except the privacy claims brought under 18 U.S.C. § 2510 *et seq.* and N.M. Stat. Ann. § 30-12-1 *et seq.* are dismissed.

Dated January 31, 2007.


s/John Edwards Conway
_____
SENIOR UNITED STATES DISTRICT JUDGE



Counsel for Plaintiff:

      Eric D. Dixon, Esq.
      Portales, New Mexico

Counsel for Defendants:

      John F. Kennedy, Esq.
      Evelyn A. Peyton, Esq.
      Cuddy, Kennedy, Albetta & Ives, LLP

      Rhonda Castillo, pro se