IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID CASTILLO,

    Plaintiff,

vs.                                                                   No. CIV 05-1228 JC/CEG

HOBBS MUNICIPAL SCHOOL BOARD, JOE
CALDERON, STAN ROUNDS,
and RHONDA CASTILLO,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court for jury trial on Wednesday, March 5 through Friday, March 7th, 2008. At the close of Plaintiff's Case-in-Chief, Defendants Hobbs Municipal School Board, Joe Calderon and Stan Rounds (collectively "Hobbs Schools Defendants") moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56. *See* Doc. 195. After determining that Plaintiff failed to offer sufficient evidence from which a reasonable jury could find that Defendants caused Plaintiff any of the damages he alleged, I granted the motion. I now enter this Memorandum Opinion to record my reasoning and contemporaneously herewith I enter Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**I.**     **Background**

Evidence supporting the following facts was presented at trial on Plaintiff's sole claim against Hobbs Schools Defendants and Rhonda Castillo brought under the Omnibus Crime Control Act, 18 U.S.C. § 2510 *et seq.*[1] Where controverted, the evidence is viewed most

---

[1] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.§ 2510 *et seq.* ("the Act"), provides for civil liability under certain circumstances for persons who (1) intentionally intercept, or procure other persons to intercept, "any wire, oral, or electronic

favorably to Plaintiff's claim.

Plaintiff David Castillo served as an administrator in the Hobbs Municipal School District ("HMSD") in Hobbs, New Mexico from August 4, 2003 through June 14, 2004.  During that time, Mr. Castillo and his wife, Defendant Rhonda Castillo, had marital problems and it was common for Mr. Castillo to stay at his mother's house periodically, while also maintaining access to the marital home.[2]

---

communication," or (2) intentionally disclose or use "the contents of any wire, oral, or electronic communication knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection."  18 U.S.C. § 2511(1)(a), (c) and (d).  18 U.S.C. § 2520 provides in part that "district courts *may* assess as damages whichever is the greater of–(A) the sum of actual damages suffered by the plaintiff; or (B) statutory damages whichever is the greater of $100 per day of violation up to $10,000." (Emphasis added.).  The Tenth Circuit has not construed this provision of the Act, but Congress amended the statute in 1986, changing the operative verb in this subsection from "shall" to "may." "Where the words of a later statute differ from those of a previous one on the same . . . subject, the Congress must have intended them to have a different meaning." *Muscogee (Creek) Nation v. Hodel*, 271 U.S. App. D.C. 212, 851 F.2d 1439, 1444 (D.C. Cir. 1988),  *DirecTV v. Meinecke* 2004 U.S. Dist. LEXIS 12659 (S.D.N.Y. July 9, 2004).  It follows, then, that Congress intended to invest district courts with the discretion to not award damages in appropriate cases.  *See Dorris v. Absher,*, 179 F.3d 420 (1999, CA6 Tenn)(plain language of 18 U.S.C. § 2520 compels conclusion that district courts have the discretion to decline the imposition of damages); *Shaver v. Shaver*, 799 F.Supp. 576 (1992, ED NC)(no award of damages, costs, or attorney's fees under 18 U.S.C. § 2520 where wife admittedly intercepted husband's wire communications but husband suffered no real damage as a result of the violation); *but see, e.g., Rodgers v. Wood*, 910 F.2d 444 (7th Cir. 1990) (holding that the lack of a legislative record supporting the change from "shall" to "may," combined with other amendments to the statute, indicate that Congress did not intend to give the district courts discretion).  Plaintiff Castillo did not request an award of statutory damages in lieu, even after I made my oral ruling that he had failed to present sufficient evidence on actual damages.  Nonetheless, had the request been made, I would have exercised my discretion under the Act to deny it in this case.

[2] An allegation of fraud was made by Hobbs School Defendants in their Motion for Summary Judgment.  Specifically, they asserted that Plaintiff and his wife, Defendant Rhonda Castillo, were colluding in this lawsuit and would, as a married couple in the community property State of New Mexico, share in any money judgment Plaintiff received.  *See* Doc. 140 at 17-18.  It appears that Plaintiff's original counsel, Ruben Cortez, elicited Ms. Castillo's assistance in preparing this lawsuit.  Ms. Castillo apparently furnished Cortez with relevant information when

It was at Ms. Castillo's request that her daughter installed a recording device on the kitchen telephone in the marital home in late January of 2004. Ms. Castillo testified that she installed the device hoping to capture harassing telephone calls she had been receiving. Ms. Castillo believed the calls were coming from Plaintiff's secretary, Lori Herrera, with whom Ms. Castillo suspected her husband was having an affair. The recording device was concealed by a vegetable bin and was set up to activate every time the kitchen telephone receiver was picked up. Only Ms. Castillo and her daughter were aware of the recording device. The device recorded all incoming and outgoing calls.

On March 2, 2004, Plaintiff entered the Castillo home. He was the only person in the house, and he called Ms. Herrera from the kitchen telephone. Ms. Castillo returned home that night, after Plaintiff had left the house, and discovered the recorded call from Mr. Castillo to Ms. Herrera. On the recording, Mr. Castillo said things to Ms. Herrera that were sexual and graphic.

Ms. Castillo immediately contacted School Board Member Joe Calderon. Calderon went to the Castillo house the same evening and Ms. Castillo played the recording for him. Ms. Castillo told Calderon that she had recorded the conversation on her home telephone.

On March 3, 2004, Ms. Castillo gave Calderon a copy of the tape. Calderon played his copy for at least two other people. The same day, Ms. Castillo also informed her three children

---

he drafted the Complaint, in which Ms. Castillo knew she would be named a defendant, and she purportedly also accompanied Plaintiff and Cortez to the courthouse to file the Complaint, paying the requisite filing fee with money from her own purse. Indeed, David and Rhonda Castillo were still legally married at the time of trial. In response to my inquiry on the record before trial began, Ms. Castillo indicated that she was unaware of any potential for personal gain that might arise from her status as wife of the Plaintiff if he were to recover damages and she stated to me, "I don't want any of it." Here, I note that the disturbing but unproven allegations of fraud and collusion did not factor in my determination that Defendants were entitled to judgment as a matter of law for lack of sufficient trial evidence on causation/damages.

that Plaintiff was having an affair and that she had recorded a conversation between Plaintiff and his suspected lover. Ms. Castillo played the tape for Calderon's wife, Irene Calderon. Several days later, Ms. Castillo played the tape from her truck, which was parked in her driveway with the windows down, and a neighbor overheard it. Ms. Castillo told the inquisitive neighbor that it was a recording of her husband and another woman.

Calderon gave the tape to then-Superintendent Stan Rounds, who testified that he became concerned about potential sexual harassment implications at HMSD. Rounds testified that it was as part of an investigation into the interaction between Plaintiff and Ms. Herrera for sexual harassment implications that he played the recording for Pam McBee, Assistant Superintendent of Personnel; Cliff Burch, then-Assistant Superintendent of Operations; John Notaro, Principal and Plaintiff's supervisor; Officer Mark Herrera, School Resource Officer; and Ms. Herrera. Rounds also informed all Hobbs School Board members that the tape existed, advised them of its possible sexual harassment implications as Rounds perceived them to be, and apprized them of his investigation. Plaintiff felt humiliated by the content of the tape.

Ultimately, Rounds decided not to renew Plaintiff's administrative contract. Instead, after Plaintiff's administrative employment contract expired on June 4, 2006, Plaintiff was offered a position as a first-grade teacher in the HMSD for the 2004-2005 school year, beginning August 16, 2004. Plaintiff accepted the offer and signed the contract with Hobbs, but then voluntarily resigned immediately prior to the start of the Fall 2004 semester when he chose to accept employment as a middle school principal in Raton, New Mexico. Plaintiff remains employed in that capacity. *See* Pl's Ex. 1, Def's Ex. K. Plaintiff's starting base salary in Raton was higher than his base salary under the 2004-2005 contract he had entered into in Hobbs. *See* Plaintiff's

Ex. 3, Table 2.

At trial, Plaintiff sought to recover both economic and non-economic losses from all Defendants based on his assertions that Defendants actions caused him to lose present and future income and retirement benefits and that he suffered emotional distress from humiliation.

## II.  Legal Standard

Judgment as a matter of law is warranted only "'[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). "[T]o affirm the grant of judgment as a matter of law the court must be certain that the evidence conclusively favors one party such that reasonable [people] could not arrive at a contrary verdict.  This court must construe the evidence and inferences most favorably to [Castillo] the non-moving party." *See Black v. M & W Gear Co.*, 269 F.3d 1220, 1239 (10th Cir. 2001) (citation and quotation omitted).  Nevertheless, "the question is not whether there is literally no evidence supporting [the claim] but whether there is evidence upon which a jury could properly find for [the plaintiff]." *See Herrera*, 474 F.3d at 685 (quotation omitted).  Accordingly, Castillo "must present more than a scintilla of evidence supporting [his] claim" for damages.  *Id*. (quotation omitted).

## III.  Discussion

### A.  Economist's Testimony on Damages

At trial, Plaintiff called economist consultant John Meyers, who was recognized by the Court as a forensic economist.  Meyers testified from his report on economic losses in the form of lost wages and benefits suffered by Plaintiff as a result of Plaintiff leaving his employment with the Hobbs Schools and going to work for Raton Schools.  The documentation relied upon by Myers

5

included:

> income tax returns and W-2s for 2004, 2005, and 2006; Mr. Castillo's check stubs for the end of 2006 and the first period in 2007 and the second period in 2007; [Plaintiff's] Raton Public Schools administrative contracts for the 2004-2005 and 2005-2006 and 2006-2007 school years; Raton Public Schools administrative salary schedules for 2004-2005 through 2007-2008; Hobbs Municipal Schools principal salary schedules for 200-2001 through 2006-2007; and finally, his educational retirement board statement of account dated 4/12/07.

Meyers Trial Test. at 5:1-11.[3]  Meyers admitted on cross examination, however, that his calculations would be incorrect if any of the information he relied upon was inaccurate and he also testified that his calculations were based in significant part solely on information he received from Plaintiff and did not corroborate in any way.  As discussed below, much of the information relied upon by Meyers was contradicted by all the evidence at trial, including Plaintiff's own testimony.  The calculations based on the inaccurate information must be disregarded in favor of the actual evidence.

### B.   i.   Plaintiff offered no evidence from which a reasonable jury could find that Plaintiff was entitled to summer school employment or additional, income-generating duties in Hobbs

Plaintiff purported to show that over a period of time he would earn significantly less money in Raton because of lost opportunities for extra income above and beyond his base salary. Yet the uncontested evidence at trial, including Plaintiff's own testimony, unequivocally established that none of those jobs were guaranteed or required in Hobbs.  An award of damages based on the possibility of extra-contractual duties that may or may not exist in Hobbs in any given year would require the jury to engage in rank speculation.  Moreover, any determination

---

[3]Citation to the trial testimony transcripts are in reference to the court reporter's original, unedited version.  Any finalized transcript may contain different page and/or line numbers.

that Plaintiff "lost" opportunities to augment his salary in Hobbs would presuppose that Defendants caused Plaintiff to lose such opportunities, where the evidence established, instead, that Plaintiff *chose* to take the position in Raton and reneged on his contract with Hobbs in order to do so.  As Hobbs Schools Defendants readily point out, Plaintiff elected to take the Raton position with full knowledge of the potential for additional duties or lack thereof in both places.  There was no evidence from which a reasonable jury could properly find that Plaintiff's 2004-2005 contract in Hobbs was tantamount to a constructive discharge.  The evidence supports but one conclusion--any damages resulting from Plaintiff taking the administrative job in Raton were the result of Plaintiff's own decision.

    **ii.**  **Plaintiff offered no evidence upon which the jury could properly conclude that Plaintiff was to receive a promotion to high school principal in Hobbs or that he was guaranteed renewal on his administrator's contract**

The evidence of Plaintiff's would-be promotion to High School Principal in Hobbs consisted of Plaintiff's own testimony about a meeting he had with Mr. Calderon and Mr. Notaro as follows:

> Joe [Calderon] would come very periodically [sic] to check up on us and to tell us what was going on in executive sessions at the school.... [We had a meeting on March 2, and it was Joe Calderon, John Notaro, and myself, in John's office... [Calderon] was feeling pretty chipper about Albert Gonzales, feeling good about him, when he comes in and says, [Big boy, pack your bags.  You're going to the high school....Things are really bad there at the high school.  The Carlsbad connection, Mr. Greg Hastings and James Johns, are F-ing up the place, and you're going to be over there to kind of calm things down because they're causing too much [sic] problems...."

Plaintiff's Trial Test. at 11:5-22.  Plaintiff then went on to recognize that "you see, the law was in effect at that time, that board members [such as Calderon] did not have a say [in promotions].

7

But the reality was that they did, because they still controlled the superintendent in what he did and how he kept his job." *Id.* at 12:9-12.

Assuming the jury found Plaintiff's testimony more credible than Calderon's (Calderon testified that he never made the statement to Plaintiff about the promotion), a reasonable jury could not base any lost earnings on a rumor of a possible future promotion that was allegedly communicated to Plaintiff by a board member unauthorized by state law to promote him. In fact, according to Plaintiff's own testimony, the individual with the authority to promote him--Stan Rounds--denied the truth of that information. Plaintiff's Trial Test. at 23:10-16. Perhaps in recognition of this, Plaintiff's economist performed his lost income calculations both assuming that the unsubstantiated future promotion would take place and without making that assumption. Regardless, there was simply insufficient evidence from which the jury might have properly concluded that Plaintiff suffered any losses related to a future promotion to High School Principal in Hobbs.

Further, the irrefuted evidence at trial pertaining to renewal of administrators' contracts in Hobbs established that administrators, unlike teachers, never receive tenure. Instead, all administrators are given one-year contracts, and non-renewal of those contracts can be for any reason or no reason at all ("cause" not necessary), though as a practical matter non-renewal often happens for a reason. *See* McBee Trial Test. at 13:18-25, 14:1-25, 15:1, 17:18-25, 18:1-25, 191-10.

**C.    Plaintiff's Testimony was the only evidence offered in support of non-economic losses and was insufficient to establish those losses**

"A jury will not be allowed to engage in a degree of speculation and conjecture that

8

renders its finding a guess or mere possibility." *United States v. Isaac-Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006). At trial, Plaintiff provided the only evidence related to any non-economic losses in the form of his own testimony, which was minimal. Specifically, Castillo stated that the content of the tape was "humiliating," Plaintiff's trial Test. at 64:19-21, and "demeaning." Pl's Tr. Test. at 23:14-16. There was no evidence of any manifestation of the emotional damages Plaintiff alleged and a reasonable jury would have no basis, short of pure speculation, for calculating or awarding any emotional distress damages.

## IV.   Conclusion

In sum, there was insufficient evidence from which a reasonable jury could have found that Plaintiff suffered actual damages as a result of his change in jobs for purposes of 18 U.S.C. § 2520(c)(2)(A) because the evidence presented indicates that Plaintiff earns more money in Raton than he did in Hobbs, he has done so each year since he chose to make the job change, and he will in the future. Further, Plaintiff's social security benefits undisputedly will be higher upon retirement given his present situation than they would have been had he remained in Hobbs, according to the only evidence presented on the subject from Plaintiff's own expert. Moreover, Plaintiff presented insufficient evidence from which a reasonable jury could have found that Plaintiff suffered non-economic losses as he alleged, for Plaintiff's testimony that he felt "humiliated" by the content of the tape recording is insufficient. Finally, it was clear from the evidence that a reasonable jury could not find that Plaintiff was forced to breach his contract in Hobbs in favor of a higher paying, more prestigious job in Raton. Instead, the evidence supports only the conclusion that it was a career *choice* Plaintiff made with knowledge of his earnings potential in both Hobbs and Raton, and it was not caused by Defendants nor did Defendants

derive any profits therefrom.  Accordingly, Defendant's Motion for Judgment as a Matter of Law is GRANTED, and this case is dismissed in its entirety with prejudice.

Dated May 8, 2008.

                                          s/John Edwards Conway
                                         _____
                                         SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Eric Dixon, Esq.
    Attorney & Counselor at Law, PA
    Portales, New Mexico

Counsel for Defendants:

    Jaquelyn Archuleta-Staehlin, Esq.
    Melissa W. O'Shea, Esq.
    Cuddy, Kennedy, Albetta, Ives & Archelta-Staehlin, LLP
    Santa Fe, New Mexico